Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| ABNER VALENTÍN ARROYO<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurridos | TA2025RA00214 | ***Revisión Administrativa***<br>Procedente de la Departamento de Corrección y Rehabilitación<br><br>Caso Núm. 301250025 |

Panel integrado por su presidenta, la Jueza Grana Martínez, el Juez Ronda Del Toro y la Jueza Lotti Rodríguez

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de diciembre de 2025.

El 2 de septiembre de año en curso el señor Abner Valentín Arroyo presentó un recurso de revisión administrativa. En este nos solicita que revoquemos cierta determinación tomada por el Departamento de Corrección y Rehabilitación que tuvo el efecto de privarle de privilegios. Los hechos esenciales para entender nuestra determinación son los siguientes.

II

El señor Valentín Arroyo es miembro de la población penal bajo la custodia del Departamento de Corrección y Rehabilitación, en adelante el Departamento. En su escrito sostiene que, el 23 de abril de 2025, la sargento Johanna Rodríguez Santiago hizo un Informe de Querella de Incidente Disciplinario en el cual le imputó la violación a los códigos 207[1] y 232.[2] En detalle la sargento

---

[1] 207. Uso de lenguaje grosero u obsceno.
[2] 232. Violar cualquiera de la reglamentación internas de convivencia y funcionamiento institucional establecidas por el Departamento de Corrección y Rehabilitación que no estén específicamente tipificadas en cualquier nivel de severidad de este reglamento.

consignó que el señor Valentín Arroyo el día de los hechos se le había acercado para que le consiguiera clorox y detergente para lavar ropa ya que este trabajaba en ornato. Indicó que cuando se disponía a verificar si podía suplirle lo que pidió Valentín Arroyo la interrumpió y le preguntó a qué hora salía. Ella respondió que salía a las 2:00pm y él le dijo; "a pues fácil llévatela y me la lavas tú que te da tiempo." La sargento le indicó que ella era la supervisora de la institución y se merecía el mismo respeto que Valentín Arroyo merecía. De igual manera, le dio instrucciones directas de ubicarse en su unidad de vivienda reiterándose que debía respetar. Consignó en el informe que el comportamiento de Valentín Arroyo fue desafiante e irrespetuoso.[3]

Así las cosas y conforme el procedimiento establecido el 5 de junio de 2025 se celebró una Vista Administrativa mediante sistema de videoconferencia a la cual compareció el Querellado y emitió su declaración así también se tomó en consideración las declaraciones de la oficial Zuleika Ortiz y la sargento Johanna Rodríguez.

Como resultado de la vista la Oficial Examinadora encontró probados los siguientes hechos:

El 23 de abril de 2025 se radicó un informe de querella de incidente disciplinario imputando al querellado la violación de los códigos.
El 23 de abril de 2025 alrededor de las 12:50 PM, el querellado se aceró al Control O.
La sargento Rodriguez estaba en la acera frente al control O.
El querellado le solicita a la sargento, clorox y detergente para lavar ropa.
El querellado pregunta a la sargento: "A qué hora tú sales?".
La sargento contesta a las "2:00 PM".
El querellado responde: "A pues, fácil, llévatela y me la lavas tú que te da tiempo".

En su Informe la Oficial Examinadora explicó que durante la vista Valentín Arroyo negó las imputaciones y aclaro que la sargento había entendido mal. Que lo que él hizo fue solicitar los líquidos y

---

[3] Véase Informe de Querella de Incidente Disciplinario, apéndice Recurso de Revisión, Anejo entrada número 1 del Sistema Unificado de Administración y Manejo de Casos (SUMAC) en el Tribunal Apelativo (TA).

luego le dijo que se llevara la ropa que daba tiempo de buscar personal para lavarla.

Escuchado el testimonio de Valentín Arroyo, la Oficial Examinadora concluyó que su testimonio no le merecía ninguna credibilidad y encontró que las expresiones del querellado hacia la sargento el 23 de abril de 2025, cumplían con los elementos del código 207. Luego de evaluar el testimonio del Querellado y la totalidad del expediente administrativo, concluyó que incurrió en violación del código 207, no así en el código 232. Así recomendó como sanción la privación de los privilegios de recreación activa, actividades especiales, comisaría, visita y cualquier otro privilegio concedido, por un término de treinta (30) días calendarios.[4]

Inconforme con la privación de los privilegios el señor Valentín Arroyo comparece ante nosotros y presenta el siguiente señalamiento de error.

> Erró el Departamento de Corrección y Rehabilitación por conducto del Oficial Examinador al hallar incurso al Sr. Abner Valentín Arroyo por violación al Código 207, cuando de la prueba desfilada no surgió elemento alguno sobre lenguaje grosero u obsceno, por lo que abusó de su discreción, actuando con pasión, perjuicio y parcialidad.

Arguye en su defensa que no surge de ningún escrito a qué se refiere la sargento al indicar que Valentín Arroyo fue grosero, no se indica que haya hecho uso de palabras soeces, "malas palabras", que le haya alzado la voz. Puntualiza que de ninguna manera se indica que Valentín Arroyo hizo manifestaciones ofensivas a su persona, sexualizadas, en alta voz, no dice que el confinado ni siquiera la haya señalado o que se le haya acercado a una distancia que haya causado que la sargento se sintiera intimidada, por lo que evidentemente no se cometió la falta imputada, con lo alegado ni siquiera se puede considerar que se le alteró la paz a la sargento, no

---

[4] Véase Resolución Querella Disciplinaria, Anejo 3.

se utilizaron vituperios, oprobios o desafíos. Sostiene que conforme el Diccionario de la Real Academia Española, 23 edición (2014), "grosero" significa: dicho de una persona: carente de educación o de delicadeza: patán, maleducado, descortés, malcriado, incorrecto.

Reiteramos que de la Querella realizada por la sargento, solo indica que le dijo al recurrente... "yo me merezco un respeto como usted también..." en ninguna manera indica que el recurrente hizo manifestaciones ofensivas a su persona, sexualizadas, en alta voz, no dice que el confinado ni siquiera la haya señalado o que se le haya acercado a una distancia que se haya sentido intimidada, ello no surge del documento, por lo que evidentemente no se cometió la falta imputada, con lo alegado ni siquiera se puede considerar que se le alteró la paz a la sargento, no se utilizaron vituperios, oprobios, desafíos, provocaciones palabras insultantes u ofensivas, que provocaran a la sargento y mucho menos tenía expectativa razonable de intimidad.

A razón de lo cual Valentín Arroyo expone que, de la prueba desfilada, así como de las determinaciones de hechos a que llegó la Oficial Examinadora no se configuran los elementos del código 207.

Por otro lado, expone que tanto los agentes del orden público, como oficiales de custodia deben tener un carácter mayor a lo esperado de un ciudadano común toda vez que conocen que están trabajando con personas, que, en lo pertinente, se encuentran privados de libertad durante años, con baja escolaridad. Así sostiene que la sargento esta entrenada para atender y resolver situaciones difíciles, con lo expresado no puede concluir ni siquiera como falta de respeto, y mucho menos se puede concluir que el confinado incurrió en la falta alegada.

Como dato adicional Valentín Arroyo aduce que se ha comportado adecuadamente, se encuentra en un área de custodia mínima desde enero de 2022, sale de la institución a laborar en

ornato en brigadas, no tiene querellas anteriores, no requiere de servicios en área de trastornos adictivos por lo que la oficial examinadora no pudo haber visto nada negativo en el su expediente.

Por último, afirma que la querella fue defectuosa en la medida que no incluye la legislación o reglamentación a que se hace referencia.

### III

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675. La evidencia sustancial es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. *Oficina de Ética Gubernamental v. Diaz Atienza,* 2025 TSPR 128; *Rolón Martinez v. Supte. Policía,* 201 DPR 26, 36 (2018). El alcance de la revisión judicial se ve limitado a instancias donde la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. *Oficina de Ética Gubernamental v. Diaz Atienza,* supra; *Departamento de Asuntos del Consumidor v. Luma Energy,* 2025 TSPR 126; *Super Asphalt v. AFI y otro, 206 DPR 803, 819* (2021).

### IV

A la luz de los criterios antes señalados comenzamos por establecer que mediante el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011 (Plan) se creó el Departamento de Corrección y Rehabilitación como el organismo

en la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y menores, así como de la custodia de todos los ofensores y transgresores del sistema de justicia criminal del país. 3 LPRA, Ap. XVIII, Art. 4. Entre las funciones del Departamento se encuentra la de estructurar la política pública correccional de acuerdo con el Plan y establecer directrices programáticas y normas para el régimen institucional. 3 LPRA, Ap. XVIII, Art. 5. Por su parte al secretario del Departamento se le autorizo a adoptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. 3 LPRA, Ap. XVIII, Art. 7, (aa).

En virtud de la autoridad concedida, el secretario del Departamento aprobó el Reglamento Núm. 9221, supra, a los fines de crear un sistema de administración correccional, de regir la seguridad, la disciplina interna y la conducta de la población correccional bajo su jurisdicción. El Reglamento recoge la política pública de modificación de conducta desde la perspectiva de la rehabilitación y establece la estructura disciplinaria de los miembros de la población correccional.

En lo pertinente dispone que cualquier oficial correccional, entre otros, podrá presentar una querella contra un miembro de la población correccional cuando sea víctima de un acto o incidente prohibido provocado por el miembro de la población correccional. Regla 6 (1) del Reglamento. La querella se redactara en letra legible e incluirá: una descripción clara y detallada del incidente que dé lugar a la misma, incluyendo la fecha (día/mes/año), hora y lugar de incidente; nombre del miembro de la población correccional

querellado; nombre de los testigos, si alguno; la prueba obtenida; manejo de la prueba, nivel y código de acto prohibido imputado; nombre del querellante; identificación precisa del querellante (puesto, numero de placa, posición, lugar de trabajo); fecha de radicación de querella disciplinaria. Regla 6 (A) (1-9).

Examinada la Querella presentada contra Valentín Arroyo vemos que esta cumple con los criterios reglamentarios antes mencionados. La Querella incluye el nombre de miembro de la población correccional; una descripción legible del incidente incluyendo hora y lugar; nombre de los testigos; el código imputado con la descripción del mismo; identificación del querellante con su número de placa. A través de la información que contiene la querella se conoce claramente la conducta imputada y los detalles sobre la misma por lo que no se violaron los derechos del miembro del a población correccional. Precisa advertir, además que los miembros de la población correccional han de esforzarse en conocer la reglamentación que les aplica, en este caso el Reglamento Núm. 9221. Sabido es que la ignorancia de la ley no excusa de su cumplimiento. 31 LPRA sec. 5331. Dicho dogma aplica a todas las personas en Puerto Rico, estén o no restringidas de su libertad.

Sostiene Valentín Arroyo y citamos que "tanto los agentes del orden público, como oficiales de custodia deben tener un carácter mayor a lo esperado de un ciudadano común, conocen que están trabajando con personas que, en lo pertinente, se encuentran privados de libertad durante años, con baja escolaridad. Los oficiales tienen a su cargo el proteger personas y propiedades, establecer ordenes, la sargento esta entrenada para atender y resolver situaciones difíciles, con lo expresado no puede concluir ni siquiera como falta de respeto, y mucho menos se puede concluir que el confinado incurrió en la falta alegada" Discrepamos, explicamos. El respeto es una vía de dos direcciones. Es decir, tanto

debe el oficial correccional respetar al miembro de la población correccional como el miembro de la población correccional respetar al oficial correccional. Ciertamente, preguntarle a qué hora sale de su trabajo para que se lleve la ropa a su casa para lavarla es un como mínimo un desafío a la autoridad de ese oficial correccional. Es más que obvio que en sus funciones no se encuentra el lavar la ropa de los confinados. Ciertamente, la invitación a la sargento a lavar la ropa de los miembros de la población correccional constituye el uso de lenguaje grosero, de haber sido una broma ciertamente se catalogaría de muy mal gusto y denota un desafío a la autoridad.

Surge del expediente ante nuestra consideración prueba sustancial que confirma la resolución recurrida. Recordemos que prueba sustancial es catalogada como aquella que relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. De manera que del expediente surge que la información de la querella consignada por la sargento fue confirmada por Zuleyra Ortiz y Maria Santiago Cruz, oficial de querella, durante la investigación del caso. De igual manera surge de la investigación que el miembro de la población correccional se disculpó con la sargento Rodríguez Santiago, acción que demuestra, como mínimo, el conocimiento de haber cometido un acto imprudente y prohibido. Como anticipamos dicha información también fue corroborada por la testigo Zuleyra Ortiz quien se encontraba dialogando con la sargento Rodriguez cuando sucedió el incidente.[5] Durante la vista Valentín Arroyo en su testimonio aclaró que lo que le indicó a la sargento era que buscara personal para que le lavaran la ropa porque la sargento salía a las dos de la tarde y le daba tiempo a buscar personal.[6]

---

[5] Véase Informe de Incidente, SUMAC Anejos entrada número 24.
[6] Véase Transcripción de la Prueba, SUMAC, Anejo entrada número 19.

No intervendremos con la apreciación y adjudicación de credibilidad que en relación con la prueba testifical haya realizado el juzgador de los hechos a nivel de instancia. Es el juzgador de instancia quien se encuentra en una mejor posición para evaluar, aquilatar y adjudicar la prueba presentada ante ellos. No obstante, salvo que se demuestre la existencia de pasión, prejuicio, parcialidad, error manifiesto, o cuando la apreciación de la prueba no concuerde con la realidad fáctica o esta sea inherentemente imposible o increíble, no habremos de intervenir con la apreciación efectuada. *Pueblo v. Apolinar Rondón*, 2025 TSPR 113. No encontramos prueba, habiendo revisado la totalidad del expediente que, contradiga la prueba sustancial que obra en el mismo a favor de sostener la determinación recurrida. Mas aun cuando la Oficial Examinadora recibió el testimonio presencial del miembro de la población correccional y no le mereció credibilidad. A esto se añade que la versión de la sargento fue corroborada por la sargento y una testigo que se encontraba dialogando con ella, la señora Ortiz. Por lo que concluimos que surge de la totalidad del expediente prueba sustancial que sostiene la corrección de la determinación recurrida. Tampoco encontramos que el Departamento se haya equivocado en la aplicación e interpretación del Reglamento Núm. 9221 y, no existe un cuestionamiento sobre violación de derechos constitucionales.

## V

En fin, concluimos que el Departamento no actuó de manera arbitraria, ilegal o irrazonable en este caso. Causa suficiente para confirmar la determinación recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones